UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brenda Ann Smith,                                    Civ. No. 21-1347 (PAM/DTS)

Plaintiff,

v.                                          **MEMORANDUM AND ORDER**

City of Minneapolis, a municipal
entity; and Officer Does, in their
individual capacity;

Defendants.

This matter is before the Court on Defendant City of Minneapolis's Motion to Dismiss.  For the following reasons, the Motion is granted in part and denied without prejudice in part.

**BACKGROUND**

In the wake of the "fires and unrest" following George Floyd's death, Minneapolis Mayor Jacob Frey issued Emergency Regulation 2020-2-1, which instituted a curfew for the city effective at 8:00 in the evening through 6:00 in the morning, beginning on May 29, 2020, and continuing through May 31, 2020.  (Am. Compl. (Docket No. 17) ¶¶ 42, 43.)

On May 30, 2020, Plaintiff Brenda Smith, a 54-year-old Black woman, and her daughter participated in a protest at 31st Street and Nicollet Avenue in Minneapolis, near the Fifth Police Precinct.  (Id. ¶¶ 16-17, 55.)  Smith wanted "to make known and voice her complete and utter dissatisfaction with the violence perpetrated by MPD officers against people of color, and particularly against black or brown individuals."  (Id. ¶¶ 53-

54.).  "As darkness began to fall, officers, without provocation or warning, shot tear gas or other chemical agents to disperse the crowd and enforce the curfew orders."  (Id. ¶ 57.) "[Smith] attempted to leave the area once the tear gas started, when suddenly someone standing next to her was shot directly in the middle of the forehead.  In a hailstorm of shots and tear gas, [Smith] fled the area in a panic without regard to where she was headed."  (Id. ¶¶ 58-59.)  In the moment, Smith thought that the police were shooting live rounds at protestors; however, she later learned that they were shooting less-lethal 40mm foam projectiles.  (Id. ¶¶ 59, 129, 177.)

While fleeing the scene, Smith became separated from her daughter and "found herself at the underpass of Interstate 35W and Lake Street."  (Id. ¶ 60.)  There, "[a] row of at least ten officers protected with helmets and riot gear loomed in the underpass as [Smith] approached.  [She] continued . . . forward in her attempt to flee the scene without any word or directions from the officers."  (Id. ¶ 61.)  "Suddenly and without warning, the officers began shooting.  Only after shots rang out did they identify themselves by exclaiming, 'This is the MPD!'"  (Id. ¶ 62.)  "Piercing pain in [Smith]'s right foot informed her that police officers had just shot her [with a less-lethal projectile].  Still screaming and more frightened than ever, she limped away from officers as shots continued to ring out.  MPD continued shooting at [Smith] as she attempted to flee."  (Id. ¶¶ 63, 66.)

As a result of being struck by the projectile, Smith injured her right ankle and broke a toe.  (Id. ¶¶ 177-78.)  Following the event, Smith has had intense foot pain and underwent "ligament repair and syndesmosis stabilization surgery to repair her right

ankle" in July 2020. (Id.) Incidentally, Smith had surgery on that ankle in 2019, and had "recovered to near full capacity" by May 2020. (Id. ¶ 75.) While recovering from the July 2020 ankle surgery, Smith had difficulty caring for herself, because she lives alone. (Id. ¶ 77.) Her "long and difficult recovery continues to present day," (id. ¶ 80) and she continues to attend physical therapy. (Id. ¶ 180.) Additionally, her depression has worsened and she suffers from post-traumatic stress disorder stemming from the incident. (Id. ¶ 81.)

The 71-page Amended Complaint raises 11 claims against Defendants City of Minneapolis and Officer Does of the Minneapolis Police Department ("MPD").[1] Minneapolis moves to dismiss Smith's four 42 U.S.C. § 1983 claims—Fourteenth Amendment violations of procedural due process, freedom of movement and presence in public, and substantive due process and equal protection, and a First Amendment violation of her right to freedom of speech and assembly—and Smith's municipal-liability claim, to the extent it relies on the § 1983 claims.

Regarding the claims at issue in this Motion, Smith seeks compensatory and special damages, as well as attorney's fees, expenses, and costs. She also seeks punitive damages for her § 1983 claims.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

---

[1] The Does have not been identified; thus, they have not entered an appearance.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6).  A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept plausible factual allegations as true.  Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support a claim.  Iqbal, 556 U.S. at 678.  At this stage, the Court assumes the allegations in the Amended Complaint are true and views them in the light most favorable to Smith.  See Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 933 n.4 (8th Cir. 2012).

## A.    Procedural Due Process

Smith alleges that the Defendant officers violated her Fourteenth Amendment right to procedural due process by failing to "inform[] that she was subject to seizure before the officer applied any force in seizing her."  (Id. ¶ 236.)  Thus, she claims that officers violated her liberty interests described in Minn. Stat. §§ 629.32 and 629.33, which are titled "Minimum Restraint Allowed for Arrest; Warrant Shown Upon Request" and "When Force May be Used to Make Arrest," respectively.

Minneapolis contends that the facts alleged in the Amended Complaint do not fall within the purview of §§ 629.32 and 629.33, because those statutes details how a peace officer may conduct an arrest.  Smith alleges that these statutes apply to her because her foot injury restricted her freedom of movement, and she did not know whether officers were going to arrest her.  Smith does not allege that police attempted to arrest her, much

4

less that she was arrested.  Indeed, §§ 629.32 and 629.33, arrest statutes, are inapplicable here because Smith was not arrested.  Moreover, Smith provides no support for her argument that § 629.32 conveys an independent liberty interest.  In any event, this claim is duplicative of her excessive-force claim, which is not at issue in this Motion. Minneapolis's Motion is granted as to Smith's procedural-due-process claim.

## B.     Freedom of Movement and Assembly

Minneapolis moves to dismiss claim that, by issuing and enforcing its curfew order, the city violated Smith's Fourteenth Amendment rights to freedom of movement and presence in public and her First Amendment right to freedom of speech and assembly.

Article III of the United States Constitution limits the jurisdiction of federal courts to justiciable cases and controversies. U.S. Const. art. III, § 2; Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992).  Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan, 504 U.S. at 560.  To satisfy Article III standing requirements, a plaintiff must demonstrate:

> (1) [she] has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)(quotations omitted).  Whether the plaintiff has established the three elements of standing is an "inescapable threshold question."  Advantage Media, L.L.C. v. City of Eden Prairie, 456 F.3d 793, 799 (8th Cir. 2006).  If a plaintiff lacks standing, the court

has no subject-matter jurisdiction and must dismiss the claim.   <u>See</u> Fed. R. Civ. P. 12(h)(3).

While challenging Minneapolis's curfew order, Smith fails to allege any claim against Minnesota's concurrent, identical curfew implemented through Governor Tim Walz's Executive Order 20-68.  (Def.'s Opp'n Mem. (Docket No. 28) at 4.)  Because Smith does not raise any such challenge, she "[cannot] show traceability or redressability, essential elements of a federal plaintiff's Article III standing." <u>Larson v. City of Minneapolis</u>, No. 21cv714, 2021 WL 4895275, at *5 (D. Minn. Oct. 20, 2021) (Tostrud, J.).  Smith contends that because she alleges that Minneapolis's curfew violated the Constitution, it is irrelevant that she failed to plead that Minnesota's curfew likewise ran afoul of the Constitution.  This argument fails.  Smith does not show traceability and redressability for her claim.  Thus, the Court lacks subject-matter jurisdiction over Smith's freedom-of-movement and freedom-of-speech claim.

Regardless, Smith's allegation that Minneapolis's curfew violated her constitutional rights fails on the merits.  Smith fails to plausibly allege that Minneapolis's curfew order was not narrowly tailored.  Indeed, as the Court concluded in <u>Larson</u>, Minneapolis's curfew "left alternative channels available" in light of the "magnitude of the public-safety risk" in the city at that time.  <u>Id.</u> at *10.  Minneapolis's Motion is granted as to Smith's freedom-of-movement and freedom-of-speech-and-assembly claim.

## C.     Substantive Due Process and Equal Protection

Minneapolis moves to dismiss Smith's claim that it violated her substantive-due-process and equal-protection rights under the Fourteenth Amendment by targeting the

curfew's enforcement based on race and content of expression.

As the Supreme Court has made clear, "the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). To sufficiently allege that she was deprived of her right to due process, Smith must first establish "a legitimate claim of entitlement to an identifiable property or liberty interest." Hughes v. Whitmer, 714 F.2d 1407, 1414 (8th Cir. 1983). Smith alleges that the Defendant officers deprived her of a liberty interest by shooting her in the foot with the projectile.

The Supreme Court has limited the types of classifications that are subject to protection under the Equal Protection Clause to those that share "an immutable characteristic determined solely by the accident of birth," Frontiero v. Richardson, 411 U.S. 677, 686 (1973), or that have been subject to a "history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 28 (1973). Classifications that are subject to protection under the Clause are limited to those such as race, alienage, national origin, religion, and gender." Gallagher v. City of Clayton, 699 F.3d 1013, 1018 (8th Cir. 2012). Only "irrational classification[s]" run afoul of the Equal Protection Clause. U.S. Dep't of Agric. v. Moreno, 413 U.S. 528, 532 (1973).

Smith fails to allege that any racial or ideological group—or any other type of group—of protestors received better treatment than she did on May 30, 2020, or any

other day.  Indeed, the Amended Complaint is void of any allegation that Smith was treated differently than similarly situated individuals regarding the curfew's enforcement. Rather, Smith alleges that MPD officers "fired . . . indiscriminately into crowds of nonviolent protesters," and that the officers even shot a woman who was standing on her front porch when the curfew was in effect.  (Am. Compl. ¶¶ 129-30.)  Defendant City of Minneapolis's Motion is granted as to this claim.

## D.    Municipal Liability

Lastly, Minneapolis moves to dismiss Smith's municipal-liability claim to the extent that it relies on the above § 1983 claims.  And it appears that the municipal-liability claim does rely wholly on Smith's other claims.  For example, Smith alleges that "[t]he implementation of the curfew order resulted in the foreseeable and widespread use of excessive force," (id. ¶ 281) and "[t]he force authorized and the curfew order itself were facially unconstitutional as their immense breadth and failure to permit alternative forms of expression rendered them improper limitations of fundamental rights."  (Id. ¶ 286.)

But many of Smith's Fourth and Fourteenth Amendment claims against the Officer Does have not been litigated.  Thus, at this stage in the proceedings, the Court grants the city's Motion as Smith's municipal-liability claim to the extent that it relies on the aforementioned § 1983 claims, but denies it without prejudice to the extent that it relies on the as-yet-unlitigated claims against the Defendant officers.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Defendant's partial Motion to Dismiss (Docket No. 21) is **GRANTED in part and DENIED without prejudice in part**.

Dated: <u>Monday, December 20, 2021</u>

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge